**Hortensia Bossi De ALLENDE, et al., Plaintiffs,**

v.

**George P. SHULTZ, Secretary of State, et al., Defendants.**

**Civ. A. No. 83–3984–C.**

United States District Court,
D. Massachusetts.

April 1, 1985.

tled to the relief previously granted.

Leonard B. Boudin, New York City, Allan R. Rosenberg, Putnam, Bell & Russell, Boston, Mass., for plaintiffs.

William P. Joyce, Asst. U.S. Atty., Boston, Mass., and Robert L. Bombaugh, Thomas W. Hussey, David V. Bernal, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM

CAFFREY, Chief Judge.

This is a civil case which presents the following question: Does the Department of State's refusal to grant a nonimmigrant visa to Hortensia Allende, widow of former Chilean President Salvador Allende, impermissibly impinge on the First Amendment rights of plaintiffs, American scholars, politicians and religious leaders who have invited Mrs. Allende to the United States to speak and exchange views with them on topics of common concern?

The case comes before the Court on defendants' motion to dismiss, or in the alternative, for summary judgment.

### Facts

In February, 1983, after receiving speaking invitations from several of the plaintiffs, Mrs. Allende applied to the United States Embassy in Mexico City for a nonimmigrant tourist visa. She wished to come to the United States for approximately 10 days. The consular officer in Mexico City determined that, under § 212(a)(28)(C) of the Immigration and Nationality Act (the Act), Mrs. Allende was ineligible to receive a visa. This statutory provision, hereinafter referred to as subsection (28), prohibits the issuance of visas to "[a]liens who are members of or affiliated with ... (iv) the Communist or any other totalitarian party ... of any foreign state ..., (v) any section, subsidiary, branch, affiliate or subdivision of any such association or party ...." 8 U.S.C. § 1182(a)(28)(C). Mrs. Allende is a member of both the World Peace Council (WPC) and the Women's International Democratic Federation (WIDF), organizations reputed to be international fronts for the Communist Party of the Soviet Union.

The Act also provides, however, that an alien who is found to be ineligible to receive a visa under subsection (28) may nevertheless be admitted to the United States if the Attorney General, in his discretion, approves a recommendation of waiver proffered to him by the Secretary of State. 8 U.S.C. § 1182(d)(3)(A). Thus, in accordance with standard procedure, the consular officer at Mexico City sought an advisory opinion from the Department of State (Department) as to whether the Department should recommend to the Attorney General that Mrs. Allende be allowed to enter the United States. After considering Mrs. Allende's application, the Department decided that she was ineligible to receive a visa not only under subsection (28), but also under section 212(a)(27) (hereinafter referred to as subsection (27)). This subsection excludes from the United States "[a]liens who the consular officer or the Attorney General knows or has reason to believe seek to enter the United States solely, principally, or incidentally to engage in activities which would be prejudicial to the public interest, or endanger the welfare, safety, or security of the United States." 8 U.S.C. § 1182(a)(27). Because there can be no waiver of ineligibility for aliens excluded under this subsection, the Embassy at Mexico City returned Mrs. Allende's passport to her and informed her that her application had been denied pursuant to 8 U.S.C. § 1182(a)(27). Thereafter, this action was instituted by American citizens who claim that the denial of Mrs. Allende's visa application violates their First Amendment rights of free speech and association.[1]

### Defendants' Motion to Dismiss

Defendants move to dismiss this case on the grounds that this Court lacks subject matter jurisdiction, plaintiffs lack standing to sue, and the complaint fails to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6). Because defendants base their 12(b)(6) claim primarily on their arguments relating to the first two issues,

---

**1.** Although Mrs. Allende is named as a plaintiff in this case, plaintiffs cannot and do not contend that any provision of law grants Mrs. Allende the right to enter this country, or that she herself has standing to raise the constitutional claims asserted by the other plaintiffs. Her role in this case is essentially a symbolic one. *See Kleindienst v. Mandel,* 408 U.S. 753, 762, 92 S.Ct. 2576, 2581, 33 L.Ed.2d 683 (1972); *Abourezk v. Reagan,* 592 F.Supp. 880, 882 (D.D.C.1984). In this opinion, therefore, the word "plaintiffs" is used to refer only to United States citizens.

it is necessary to address only the questions of standing and jurisdiction.

█ Defendants' assert that plaintiffs lack standing to challenge the denial of Mrs. Allende's visa application, because the denial affects neither plaintiffs' right to cross the nation's borders nor their ability to communicate with Mrs. Allende by mail or telephone or to meet with her in Mexico City. These arguments, however, were soundly rejected by the Supreme Court in *Kleindienst v. Mandel*, 408 U.S. 753, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972). After reaffirming the well-established principle that the Constitution protects not only the right to convey information and ideas, but also the right to receive them, 408 U.S. at 762–63, 92 S.Ct. at 2581–82, the Court in *Mandel* explicitly recognized that "First Amendment rights are implicated" in the Government's refusal to grant a visa to an alien with whom American citizens wish to speak. *Id.* at 765, 92 S.Ct. at 2582. With respect to the Government's contention in that case that telephones and other technological developments adequately replace personal contact, the Court also noted:

> This argument overlooks what may be particular qualities inherent in sustained, face-to-face debate, discussion and questioning .... [W]e are loath to hold on this record that existence of other alternatives extinguishes altogether any constitutional interest on the part of the appellees in this particular form of access.

408 U.S. at 765, 92 S.Ct. at 2582. In light of these declarations by the Supreme Court, I rule that plaintiffs have standing to challenge defendants' decision to exclude Mrs. Allende from the United States. *See also Abourezk v. Reagan*, 592 F.Supp. 880, 883–84 n. 10 (D.D.C.1984) and cases cited therein.

█ Defendants further contend, however, that this Court lacks jurisdiction to hear plaintiffs' claims. They maintain that both the Constitution and historical principles of sovereignty bestow "the responsibility for regulating the relationship between the United States and our alien visitors ...

[on] the political branches of the Federal Government." *Mathews v. Diaz*, 426 U.S. 67, 81, 96 S.Ct. 1883, 1892, 48 L.Ed.2d 478 (1976). Although the United States Supreme Court has consistently recognized that the sensitive and fluctuating nature of international relations dictates "a narrow standard of review of decisions made by Congress or the President in the area of immigration and naturalization," *id.* at 82, 96 S.Ct. at 1892, the Court has nevertheless emphasized that the government's power in this area is not entirely immune from judicial scrutiny. *Fiallo v. Bell*, 430 U.S. 787, 793 n. 5, 795–96 n. 6, 97 S.Ct. 1473, 1478 n. 5, 1479–80 n. 6, 52 L.Ed.2d 50 (1977). The exercise of judicial review, though necessarily limited in scope, is particularly appropriate in cases like the one at bar which involve fundamental rights of United States citizens. *Id., Kleindienst v. Mandel*, 408 U.S. 753, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972); *Abourezk v. Reagan*, 592 F.Supp. at 883–84 n. 10. I therefore rule that this Court has jurisdiction over the action presently before it.

Because plaintiffs have standing to bring suit and this Court has jurisdiction to hear their claims, I further rule that defendants' motion to dismiss should be denied.

*Defendants' Motion for Summary Judgment*

Defendants maintain that they are entitled to summary judgment because they have presented legally adequate reasons for their refusal to grant Mrs. Allende a visa. The validity of their contention must be analyzed within the framework of the Supreme Court's landmark decision, *Kleindienst v. Mandel*, 408 U.S. 753, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972). In that case, plaintiffs, who were American students and scholars, challenged the Government's refusal to issue a visa to Ernest E. Mandel, a Belgian journalist and self-proclaimed "revolutionary Marxist." Mr. Mandel's visa application was rejected because the Department of State determined, pursuant to subsection (28), that he was ineligible to receive a visa, and the Attorney General

thereafter declined to exercise his discretion to waive the Department's finding of ineligibility. In upholding the Attorney General's decision to exclude Mandel, the Court stated:

> In the case of an alien excludable under § 212(a)(28), Congress has delegated conditional exercise of this power to the Executive. We hold that when the Executive exercises this power negatively on the basis of a *facially legitimate and bona fide reason*, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against the First Amendment interests of those who seek personal communication with the applicant. What First Amendment or other grounds may be available for attacking exercise of discretion for which no justification whatsoever is advanced is a question we neither address nor decide in this case.

408 U.S. at 770, 92 S.Ct. at 2585 (emphasis added).

The lower federal courts have interpreted *Mandel* to require the Government to provide a justification for an alien's exclusion when that exclusion is challenged by United States citizens asserting constitutional claims. *E.g., Burrafato v. United States,* 523 F.2d 554, 556 (2nd Cir.1975), *cert. denied* 424 U.S. 910, 96 S.Ct. 1105, 47 L.Ed.2d 313 (1976); *Abourezk v. Reagan,* 592 F.Supp. 880, 881 (D.D.C.1984). The line of precedents from the lower courts further reveals that the explanation given must be "facially legitimate and bona fide" not only in a general sense, but also within the context of the specific statutory provision on which the exclusion is based. *See Abourezk,* 592 F.Supp. 880; *El-Werfalli v. Smith,* 547 F.Supp. 152 (S.D.N.Y.1982); *NGO Committee on Disarmament v. Haig,* No. 82 Civ. 3636, slip op. (S.D.N.Y. June 10, 1982), *aff'd,* 697 F.2d 294 (2d Cir. 1982).

In this case, the Department bases its determination of Mrs. Allende's excludability on 8 U.S.C. § 1182(a)(27). As noted above, subsection (27) renders ineligible for admission to the United States:

> Aliens who the consular officer or the Attorney General knows or has reason to believe seek to enter the United States solely, principally, or incidentally to engage in activities which would be prejudicial to the public interest, or endanger the welfare, safety or security of the United States; ....

The unclassified affidavits of Under Secretary of State Lawrence S. Eagleburger and Deputy Assistant Secretary of State Louis P. Goeltz set forth two reasons for the denial of Mrs. Allende's visa application pursuant to subsection (27). The affidavits state, first, that Mrs. Allende is a member of two organizations affiliated with the Communist Party of the Soviet Union, Eagleburger Affidavit ¶ 12; Goeltz Affidavit ¶ 17; and second, that her admission to the United States "for the purpose and during the period specified in the application would have been prejudicial to the conduct of the foreign affairs of the United States," Eagleburger Affidavit ¶ 12; Goeltz Affidavit ¶ 16.

To rule on the legitimacy of these explanations, it is unnecessary for this Court to scrutinize the parameters of subsection (27), as other courts have felt obliged to do. *See Abourezk,* 592 F.Supp. 880; *El-Wefalli,* 547 F.Supp. 152. It is sufficient merely to consider what classifications lie outside the scope of this provision. Among the classes of aliens to which subsection (27) does *not* apply are those which fall squarely within the ambit of one of the other thirty-two statutory categories of ineligibility listed in § 212(a) of the Act. If Congress had intended subsection (27) to encompass the substance of categories other than (27), it presumably would not have included those other categories. "It is the duty of the court to give effect, if possible, to every clause and word of a statute, avoiding ... any construction which implies that the legislature was ignorant of the meaning of the language it employed." *Montclair v. Ramsdell,* 107 U.S. 147, 152, 2 S.Ct. 391, 394, 27 L.Ed. 431 (1882). *See also* 2A N. Singer, *Sutherland Statutory Construction,* § 46.06 (4th ed. 1984). ("A

statute should be construed so that ... no part will be inoperative or superfluous, void or insignificant ....") Subsection (28) establishes the ineligibility of foreigners who are associated with communist or totalitarian organizations. Because subsection (28) directly encompasses Mrs. Allende's membership in WPC and WIDF, I rule that her affiliation with these organizations is not, in itself, a "facially legitimate and bona fide" reason for her exclusion within the meaning of subsection (27).[2]

■ Defendants' second reason for excluding Mrs. Allende, namely that her admission "would have been prejudicial to the conduct of the foreign affairs of the United States," Eagleburger Affidavit, ¶ 12, is entirely conclusory. In *Abourezk v. Reagan*, the Department of State sought to justify the exclusion of certain aliens on the basis of the precise explanation proffered here. The court in that case rejected the Department's justification, stating:

> In the absence of additional details, it could reasonably be concluded that the Department of State denied visas to these alien applicants because it did not agree with or feared the content of whatever communication they might make while in this country. This conclusion would be especially relevant in these cases where the visa denials were defended, at least in part, on the ground that the Department of State considered the aliens' proposed 'activities' in the United States to be prejudicial—yet the only activities that had been planned were protected speech and association.
>
> In the view of the Court, an alien invited to impart information and ideas to American citizens in circumstances such

as these may not be excluded under subsection (27) solely on account of the content of his proposed message. For although the government may deny entry to aliens altogether, or for any number of specific reasons, it may not, consistent with the First Amendment, deny entry solely on account of the content of speech.

592 F.Supp. at 887 (citations omitted).

Judge Greene's cogent analysis in *Abourezk* applies equally well to the case at bar.

Additionally, the Department's own interpretation of the scope of subsection (27) demonstrates that vague notions of foreign policy do not provide a sufficient basis for the invocation of this provision. The Department's Foreign Affairs Manual explains:

> It was the intent of Congress that the provisions of paragraph (27) of Section 212(a) of the Act be used to safeguard the security of the United States. *They must not be used as "catch-all" provisions for refusing visas in cases which do not fit in other paragraphs of Section 212(a).*

*Foreign Affairs Manual,* vol. 9 (Visa TL–880, ¶ 1) (emphasis added).

Because defendants' reasons for excluding Mrs. Allende pursuant to subsection (27) neither present nor describe any set of facts which could be construed to fall specifically within the meaning of this provision, summary judgment cannot be granted on the basis of defendants' unclassified affidavits.

■ In support of their motion for summary judgment, defendants also submit for the Court's *in camera* inspection classified

---

**2.** It may be noted that, had the Government excluded Mrs. Allende on the basis of subsection (28) rather than subsection (27), the legitimacy of the reasons presented in the unclassified affidavits and set forth above would be dubious at best. In the years since the Supreme Court decided *Mandel,* Congress has restricted the bases on which the Secretary of State may decline to recommend that the Attorney General waive a finding of ineligibility under subsection (28). The McGovern Amendment, 22 U.S.C. § 2691, provides that the Secretary of State should not

withhold such a recommendation of waiver for foreign policy reasons, but only for reasons relating to national security. In this case, the reason given for Mrs. Allende's exclusion, other then her membership in WPC and WIDF, is the Department's determination that her admission "would have been prejudicial to the conduct of the foreign affairs of the United States." Eagleburger Affidavit, ¶ 12. The Secretary of State could not, on the basis of such a reason, decline to recommend the admission of an alien found to be excludable under subsection (28).

documents which purportedly explain in detail the specific reasons for the Department's denial of Mrs. Allende's visa application. This Court, however, declines to examine these impounded materials or to consider them as a basis on which to grant summary judgment, because the Court of Appeals for the First Circuit has held repeatedly that summary judgment may not be granted on the basis of materials to which the party opposing summary judgment is denied access.

The circuit court has articulated two reasons for its position. First, Federal Rule of Civil Procedure 56 allows a trial court presented with a motion for summary judgment to consider only "materials that would be admissible in evidence or otherwise usable at trial." *Association for Reduction of Violence v. Hall*, 734 F.2d 63, 67 (1st Cir.1984), *quoting* 6 J. Moore, *Moore's Federal Practice*, ¶ 56.11 [1.–8], at 206–7 (2d ed. 1983). The court has therefore admonished that "material that does not come within the above broad category should not be considered." *Id.* Second, the very nature of the adversary system demands that both parties be given full access to any information which may form the basis for a judgment. In *Bane v. Spencer*, 393 F.2d 108 (1st Cir.1968), *cert. denied*, 400 U.S. 866, 91 S.Ct. 108, 27 L.Ed.2d 105 (1970), the court declared:

> [T]he defendant should not be able to use the [impounded] records as a sword to seek summary judgment and at the same time blind plaintiff so that he cannot counter. Defendant's affidavit must contain on its face, for plaintiff to see, whatever defendant wishes to rely upon to seek summary judgment.

*Id.* at 109.

Although this Court is aware that there may be a point at which the theoretical ideals of the adversary system must bow to the practical necessities of preserving national security and international relations, that point has not yet been reached in this case. It is noteworthy that the defendants have offered neither a summary of the information contained in the classified materials, like that which the court provided in *Abourezk*, 592 F.Supp. at 888, and *El-Werfalli*, 547 F.Supp. at 154, nor a detailed explanation for their inability to do so, like that suggested by the court in *Phillippi v. Central Intelligence Agency*, 546 F.2d 1009, 1013 (D.C.Cir.1976).

In *Abourezk*, a case which raised the same legal issues presented here, the District Court granted summary judgment for the defendants on the basis of information contained in classified affidavits which the court examined *in camera*. In support of its decision to review these impounded documents, the court cited *Hayden v. National Security Agency Central Security Service*, 608 F.2d 1381 (D.C.Cir.1979), *cert. denied*, 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980), and *Phillippi v. Central Intelligence Agency*, 546 F.2d 1009 (D.C.Cir.1976) for the proposition that *in camera* inspections are not unusual in cases involving classified materials. *Abourezk*, 592 F.Supp. at 887, n. 25. I rule, however, that *Hayden* and *Phillippi* are inapposite to the situation presented here. Each of those suits was brought under the Freedom of Information Act, 5 U.S.C. §§ 552 *et seq.*, and the plaintiffs in each case sought only to procure certain information which the defendant agencies claimed was privileged. In neither case did the defendant attempt to use classified information offensively to obtain judgment in its favor.

Because it would be improper for this Court to consider the classified materials which defendants submitted in support of their motion for summary judgment, and because defendants' unclassified affidavits fail to establish a "facially legitimate and bona fide" reason for the denial of Mrs. Allende's visa application, I rule that defendants' motion for summary judgment should be denied. The denial of this motion is made without prejudice to its renewal if defendants can produce unclassified material establishing, as a matter of public record, a "facially legitimate and bona

fide" reason for their refusal to grant Mrs. Allende a visa.

Order accordingly.