**HARVARD LAW SCHOOL FORUM, et al., Plaintiffs,**

**v.**

**George P. SHULTZ, Secretary of State, Defendant.**

**Civ. A. No. 86–0977–S.**

United States District Court, D. Massachusetts.

April 18, 1986.

---

**526**

Scott P. Lewis, Maria P. Nichols, Palmer & Dodge, John Reinstein, Civil Liberties Union of Mass. Foundation, Boston, Mass., for plaintiffs.

Asst. U.S. Atty. Martha Sosman, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION AND DEFENDANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

SKINNER, District Judge.

Plaintiffs in this action, the Harvard Law School Forum, Professor Alan Dershowitz, and a Harvard Law School student, Brad Roth, bring suit to enjoin the Secretary of State (the "Secretary") from refusing to permit Palestine Liberation Organization ("PLO") member Zuhdi Labib Terzi to travel to Cambridge, Massachusetts to participate in a debate with Professor Dershowitz on Middle Eastern politics. Plaintiffs claim that the Secretary's refusal violates their First Amendment rights to hear a debate on a critical political question.

*Facts.*

The facts in this case are not in dispute. In August, 1985, the plaintiff Harvard Law School Forum invited Zuhdi Labib Terzi to participate in a debate on "Prospects for Peace in the Middle East" with Professor Dershowitz. Terzi is the Permanent Observer of the PLO at the United Nations ("UN") and the highest ranking member of the PLO in the United States. Professor Dershowitz is said to be an outspoken member of the Harvard Law School faculty and a well-known pro-Israeli activist. Plaintiff Roth arranged the debate and the Forum agreed to sponsor it, scheduling it for October 31, 1985.

The parties agree that Terzi, as a member of the PLO, is an excludable alien under federal immigration law. 8 U.S.C. § 1182(a)(28)(F). The excludability of a member of the PLO is not dependent on any demonstration by the State Department that admission of the individual to this country would pose a security threat. 22 U.S.C. § 2691(c). However, the Attorney General may, "in his discretion", grant a waiver allowing an excludable alien into the country temporarily. 8 U.S.C. § 1182(d)(3). Such waivers are subject to conditions as prescribed by the Attorney General. 8 U.S.C. § 1182(d)(6).

The United States, as host country of the UN, has entered into the "UN Headquarters Agreement". In Section 11 of the Headquarters Agreement, the United States agreed not to impede the transit to and from the UN Headquarters of members of Observer Missions to the UN. As a result, the Attorney General, on advice from the Secretary of State, has granted a waiver of excludability to allow PLO Observer Mission personnel access to the UN headquarters, even though such individuals are excludable under immigration law.

With respect to individuals covered by the Headquarters Agreement who are from certain states or organizations, the United States has a general policy of permitting non-UN related travel only within a twenty-five mile radius of the center of New York City. Since the PLO Observer Mission in New York was established in 1974, its personnel have been subject to this geographic limitation. Within the 25-mile limit, the United States has not sought to impose any restrictions on the non-UN related political activity of PLO Observer Mission personnel, but members of the PLO mission may travel beyond the geographic limitation for non-UN related activity only if they receive prior State Department approval of their proposed itinerary and purpose of travel.

In September, 1985, Terzi submitted to the United States Mission to the UN a standard form requesting authorization to travel to Massachusetts to participate in the debate at the Harvard Law School. The United States Mission notified Terzi that the State Department had denied his request. No reason for the denial was given.

Previous to this denial, Terzi had been allowed to travel outside the geographic limitation on several occasions for personal reasons or social gatherings. He was allowed on one occasion to travel to Massachusetts for a summer vacation. Each time Terzi requested a travel permit for the purpose of speaking in public about the politics of the Middle East or to participate in public political discussions, however, it was denied. Terzi has not been allowed to accept such invitations to Georgetown University, Rutgers University and the University of Virginia.

In opposition to the plaintiffs' motion, the defendant has submitted the declaration of Alan L. Keyes, Assistant Secretary of State for International Organization Affairs. In his declaration, the Assistant Secretary sets forth the United States' policy toward the PLO generally and toward Terzi's travel requests. The Assistant Secretary states that the United States has consistently refused to recognize or negotiate with the PLO as long as the PLO does not recognize Israel's right to exist and does not accept certain UN Security Council resolutions.

Our policy is designed to withhold legitimization of the PLO until it has satisfied these conditions. Consistent with this policy, our diplomatic strategy has been aimed at discouraging other states from recognizing or otherwise according legitimacy to the PLO unless these conditions are met. If we were to allow PLO members to travel freely throughout the United States furthering their political agenda and attempting to build their political base, we would undercut our policy of not lending legitimacy to that organization.

Keyes Declaration, ¶ 5.

With respect to Terzi specifically, the Assistant Secretary states that his travel requests

have generally been granted when his travel was for personal business, family visitation, or other humanitarian reasons ... [and] have not been granted ... when the purpose of his travel was to engage in political activity on behalf of the PLO.... The particular request at issue in this case, namely, Terzi's request to participate on October 31, 1985 in the Harvard Law School Forum in Cambridge, Massachusetts was denied based on the judgment of responsible officials in the Department of State that Terzi's appearance at that function would have constituted political activity on behalf of the PLO.

Keyes Declaration, ¶ 12.

In a supplemental declaration, Assistant Secretary Keyes clarified that when assessing whether a member of the PLO Observer Mission is requesting a travel waiver to participate in "political activity", the United States considers that the category includes but is not limited to public speaking:

Consistent with our policy of avoiding the appearance of legitimizing the PLO until certain conditions are met, we subsume within "political activity" any activity that would lend support, honor, recog-

nition, or attention to the PLO member in his PLO capacity, even where public speaking is not involved. For example, we would not grant a travel waiver for a PLO official's request to appear at a fund-raising dinner, to receive an award, to accept an honorary degree, to participate in a rally or parade, or otherwise to conduct PLO business not related to the UN.

Keyes Amended Declaration, ¶ 10.

The Harvard Law School Forum has now made arrangements for the Terzi-Dershowitz debate to be held at Harvard Law School on April 28, 1986 if Terzi is permitted to travel to Cambridge. Plaintiffs bring their motion for a preliminary injunction to enjoin the Secretary from prohibiting Terzi from participating in the debate.

*Justiciability.*

■ The first issue presented by the Secretary's motion is whether plaintiff's complaint raises a nonjusticiable political question. The Secretary's argument that this case is not judicially reviewable is twofold. First, he argues that the executive's decisions with respect to the privileges and treatment to be afforded to foreign officials are not reviewable because they raise purely political questions. Second, he argues that the specific decision at issue in this case, the denial of Terzi's travel request, is a discretionary political matter, not subject to review under the Supreme Court's landmark decision in *Kleindienst v. Mandel*, 408 U.S. 753, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972).

The Secretary contends that because Terzi is "the highest ranking official of the PLO in this country" the executive's decisions as to how to treat him are wholly political in character and not subject to judicial review. In the Supreme Court's leading case on the political question doctrine, the Court identified the following factors as essential to the finding of a political question:

Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Baker v. Carr,* 369 U.S. 186, 217, 82 S.Ct. 691, 710, 7 L.Ed.2d 663 (1962). The Court then went on to say that unless one (or more) of the above "formulations" was inextricable from the issue in the case, the court should accept jurisdiction. *Id.* The Court was careful to distinguish "political cases" from "political questions", noting that courts cannot reject "a bona fide controversy as to whether some action denominated 'political' exceeds constitutional authority". *Id. See also* Tribe, *American Constitutional Law* 75–76 (1978).

The Secretary argues that the issue in this case is a political question because the President, not the judiciary, is charged with the authority to make decisions regarding the recognition of foreign governments and the nature of diplomatic relations to be conducted with those governments. The Secretary points to Art. II, § 2, cl. 2 and § 3 of the Constitution (the power to appoint and receive ambassadors) as the "textually demonstrable constitutional commitment" of the issue to the executive.

It is well settled that the decision whether or not to recognize a foreign government or entity is a political question to be decided by the executive. *Chicago & Southern Airlines v. Waterman Steamship Corp.,* 333 U.S. 103, 68 S.Ct. 431, 92 L.Ed. 568 (1948); *Guaranty Trust Co. v. United States,* 304 U.S. 126, 58 S.Ct. 785, 82 L.Ed. 1224 (1938). Similarly, the decision to establish diplomatic relations with a foreign government or entity is a political

question. *Americans United for Separation of Church and State v. Reagan*, 786 F.2d 194, 201–02 (3d Cir.1986). However, this case does not involve a challenge to the recognition, nonrecognition or establishment of relations with a foreign government or entity. The issue in this case is whether the Secretary of State can constitutionally deny the travel request of a UN Observer on the basis of the Observer's intention to participate in a political debate with American citizens. Although the Secretary's proffered reason for denying the request involves the executive's policy of not affording recognition to the PLO, the case is not a challenge to that policy. A determination of the constitutionality of the Secretary's conditioning of a waiver of excludability under 8 U.S.C. § 1182(d) does not impinge upon the executive's conduct of foreign relations simply because the individual at issue is a member of a nonrecognized foreign entity.

Moreover, despite the Secretary's argument to the contrary, *Kleindienst v. Mandel*, 408 U.S. 753, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972) and its progeny strongly indicate that this case is judicially reviewable. In *Mandel*, the Court determined that where Congress had provided a waiver procedure in the statutory scheme governing excludability of aliens, the courts could determine whether the executive's decision not to grant such a waiver was supported by a "facially legitimate and bona fide" reason. *Id.* at 767–770, 92 S.Ct. at 2584–85. Although the Court did not explicitly address the political question doctrine, the case suggests that the federal courts have some role in enforcing constitutional restraints on the executive's implementation of the statutory scheme enacted by Congress. *Id.*

The lower courts have also rejected arguments that they are without the power to hear First Amendment challenges to the executive's decision to exclude aliens. *See*

*Abourezk v. Reagan*, 785 F.2d 1043 (D.C. Cir.1986); *Allende v. Shultz*, 605 F.Supp. 1220 (D.Mass.1985). In *Allende*, the court considered whether the issue of excludability of aliens was constitutionally and historically bestowed on the political branches such that judicial review was impermissible. The court concluded that it did have jurisdiction over plaintiffs' First Amendment challenges to the exclusion of the widow of former Chilean President Salvador Allende.

> Although the United States Supreme Court has consistently recognized that the sensitive and fluctuating nature of international relations dictates "a narrow standard of review of decisions made by Congress or the President in the area of immigration or naturalization," ... the Court has nevertheless emphasized that the government's power in this area is not entirely immune from judicial scrutiny.... The exercise of judicial review, though necessarily limited in scope, is particularly appropriate in cases like the one at bar which involve fundamental rights of United States citizens.

*Allende, supra,* at 1223 (citations omitted). In *Abourezk*, the court of appeals also concluded that the judiciary has a role in reviewing the executive's decisions in this area:

> The Executive has broad discretion over the admission and exclusion of aliens, but that discretion is not boundless. It extends only as far as the statutory authority conferred by Congress and may not transgress constitutional limitations. It is the duty of the courts, in cases properly before them, to say where those statutory and constitutional boundaries lie.

*Abourezk, supra,* at 1061–62.[1]

This case, which involves plaintiffs' First Amendment rights to participate in a debate with an individual who is prohibited by the Secretary from traveling outside a con-

---

1. The Secretary attempts to distinguish *Allende* and *Abourezk* as cases involving private individuals and not a foreign official or representative. This distinction is factually inaccurate with respect to *Abourezk*, which concerned the exclusion of Tomas Borge, the Interior Minister of Nicaragua, among others. *Abourezk, supra,* at 1048. Moreover, the distinction is untenable because individuals who have official governmental or organizational duties may also speak as private individuals and not in a representative capacity.

fined geographic area for the purpose of engaging in political activity is indistinguishable from the exclusion cases cited above. In each of these cases, the court concluded that it did have a limited role in determining whether the denial of a waiver of excludability was constitutional. I conclude that the court in this case has a similar role in determining whether the conditions imposed on the waivers granted by the executive are constitutional. Accordingly, the case will not be dismissed on the basis that it presents a nonjusticiable political question.

*Motion for Preliminary Injunction.*

■ Turning to the merits, plaintiffs would be entitled to a preliminary injunction if they could show that (1) they will suffer irreparable harm if the injunction is not granted; (2) such harm outweighs any harm that granting injunctive relief would cause the defendant; (3) plaintiffs will most likely succeed on the merits; and (4) the public interest will not be adversely affected by the granting of the injunction. *Agency Rent-A-Car, Inc. v. Connolly,* 686 F.2d 1029, 1034 (1st Cir.1982).

The Secretary contends that the plaintiffs cannot show either irreparable harm or a likelihood of success on the merits. The Secretary's argument as to irreparable injury can be quickly dismissed. A loss of First Amendment freedoms constitutes irreparable injury. *Maceira v. Pagan,* 649 F.2d 8, 18 (1st Cir.1981) (citing *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2689–90, 49 L.Ed.2d 547 (1976)).

The question as to whether plaintiffs have demonstrated a likelihood of success on the merits is more complicated. Framed in statutory terms, the question is whether 8 U.S.C. § 1182(d)(6), providing that the Attorney General shall prescribe conditions for excludable aliens whose exclusion is

waived under 8 U.S.C. § 1182(d)(3), is unconstitutional as applied here in that it deprives plaintiffs of freedom of speech guaranteed by the First Amendment.[2]

■ Before answering this question, however, it is necessary to determine the applicable legal standard. The Secretary suggests that if any judicial review is permissible, then only the limited review set forth in *Mandel* is appropriate. I agree.

The *Mandel* standard is appropriately employed here to test the constitutionality of the Secretary's actions because the conditions imposed on Terzi are the equivalent of denying him entry into the country to accept an invitation to participate in a debate in Cambridge. Since American citizens could challenge the Attorney General's decision not to waive his exclusion under the *Mandel* standard if Terzi had been entirely excluded, that standard is the appropriate one by which to measure conditions which produce the same result for plaintiffs in this case.[3]

In *Mandel*, the Court held that where the executive refuses to waive an alien's excludability "on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against the First Amendment interests of those who seek personal communication with the applicant". *Mandel, supra,* 408 U.S. at 770, 92 S.Ct. at 2585. The government's proffered reason for denying a waiver to Mandel was that he had previously abused such waivers by going beyond his stated itinerary. *Id.* at 769, 92 S.Ct. at 2585. The Court found that this reason was facially legitimate and bona fide. *Id.*

In *Allende,* Chief Judge Caffrey explained how *Mandel* has been interpreted:

---

**2.** The plaintiffs do not claim that Terzi's constitutional rights have been violated.

**3.** Whether plaintiffs have access to Terzi's ideas through alternative means, such as books, speeches, tapes or telephone hookups is irrelevant to the First Amendment inquiry in this case. As the Court noted in *Mandel,* "[t]his

argument overlooks what may be particular qualities inherent in sustained, face-to-face debate, discussion and questioning". *Mandel, supra,* 408 U.S. at 765, 92 S.Ct. at 2583. *See also, Abourezk v. Reagan,* 592 F.Supp. 880, 883 (D.D.C.1984).

The lower federal courts have interpreted *Mandel* to require the Government to provide a justification for an alien's exclusion when that exclusion is challenged by United States citizens asserting constitutional claims. *E.g., Burrafato v. United States*, 523 F.2d 554, 556 (2nd Cir.1975), *cert. denied* 424 U.S. 910, 96 S.Ct. 1105, 47 L.Ed.2d 313 (1976); *Abourezk v. Reagan*, 592 F.Supp. 880, 881 (D.D.C.1984). The line of precedents from the lower courts further reveals that the explanation given must be "facially legitimate and bona fide" not only in the general sense, but also within the context of the specific statutory provision on which the exclusion is based. *See Abourezk*, 592 F.Supp. 880; *El-Werfalli v. Smith*, 547 F.Supp. 152 (S.D.N.Y. 1982); *NGO Committee on Disarmament v. Haig*, No. 82 Civ. 3636, slip op. (S.D.N.Y. June 10, 1982) *aff'd*, 697 F.2d 294 (2d Cir.1982).

*Allende, supra*, at 1224. I concur in the Chief Judge's reading of the cases following *Mandel*. The Secretary is obliged to justify the denial of Terzi's travel request with a facially legitimate and bona fide reason in the face of plaintiffs' assertion of their First Amendment rights to participate in a debate with Terzi.

The justification the Secretary offers for the denial of Terzi's travel request is that if the Secretary were to allow Terzi to participate in political activity outside of the limited area in which he is presently allowed to travel and publicly speak, he would be undermining the United States' policy of not lending legitimacy to the PLO. Thus, the Secretary concedes that his reason is based on Terzi's proposed participation in a political debate with American citizens.

Although the Secretary's reason appears to be bona fide, it is not facially legitimate. The Secretary's justification is directly related to the suppression of a political debate with American citizens. If plaintiffs in this case desired to interact with Terzi in a social setting, the Secretary would allow such interaction. Because they desire to hear his views on the politics of the Middle East in a political forum, they are denied access to him. The Secretary's decision on the travel request at issue is therefore based on the content of the discussions and interaction Terzi would have with those outside the geographic limitation. The Secretary's actions are completely at odds with the First Amendment's protection of political debate and our "national commitment to the principle that debate on public issues should be uninhibited, robust and wide open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials". *New York Times v. Sullivan*, 376 U.S. 254, 270, 84 S.Ct. 710, 721, 11 L.Ed.2d 686 (1964).

The speech at issue in this case is at the heart of what was intended to be protected by the First Amendment:

> Whatever differences may exist about interpretations of the First Amendment, there is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs.

*Mills v. Alabama*, 384 U.S. 214, 218, 86 S.Ct. 1434, 1437, 16 L.Ed.2d 484 (1966). This speech is no less protected because the listeners' and debater's First Amendment rights are asserted. *Mandel, supra*, 408 U.S. at 762–65, 92 S.Ct. at 2581–83. The Secretary's proffered reason for denying Terzi's travel request is not facially legitimate because it is related to the suppression of protected political discussion. Accordingly, even under the limited review contemplated by *Mandel*, I conclude that it is likely that the Secretary's actions will be adjudged unconstitutional.

Finally, I must consider the balancing of the public interest. It may well be that the public interest will, in some respect, be adversely affected by affording a forum to a PLO representative whose policies are in conflict with those of the United States and indeed are anathema to many citizens. The public interest in preserving free and open debate on precisely such subjects, however, must be regarded as of overwhelming priority, as mandated by the First Amend-

ment, and as being at the heart of our survival as a free people.

Plaintiffs' motion for a preliminary injunction is ALLOWED. The Secretary's motion to dismiss or in the alternative for summary judgment is DENIED.