Antonio VENTURA–ESCAMILLA and
Rosa Maria Martinez de
Ventura, Petitioners,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.

No. 80–7255.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 9, 1981.

Decided June 1, 1981.

Carol Leah Delton, San Francisco, Cal., for petitioners.

Jimmy Gurule, Washington, D. C., for respondent.

Before WALLACE and POOLE, Circuit Judges, and GRANT,* District Judge.

POOLE, Circuit Judge:

We affirm the decision of the Board of Immigration Appeals which ordered Petitioners' deportation.

Petitioners, Antonio Ventura-Escamilla and his wife, Mrs. Rosa Maria Martinez de Ventura (the Venturas), are Mexican citizens who illegally entered the United States without inspection in March of 1975, settled in Watsonville, California, and have since

* The Honorable Robert A. Grant, Senior United States District Judge, Northern District of Indiana, sitting by designation.

then resided continuously in this country. On June 8, 1976 their daughter Maria Del Carmen was born. Six months later, in December of 1976, the Venturas attempted to apply for a visa from the American Consulate in Tijuana, Mexico as special immigrants exempt from the requirements of 8 U.S.C. § 1182(a)(14).[1] They claim that all necessary papers for their visa applications were delivered to a Watsonville Notary, Francis Silliman Associates, around December 15, 1976 and mailed to the U. S. Consulate in Tijuana no later than December 22, 1976.

The American Consulate in Tijuana date-stamped the Venturas' applications on January 9, 1977. Because they did not meet the requirements for special immigrant status in any category under the immigration laws as amended effective January 1, 1977 the Consul denied their visa applications.

The Venturas claim that they were never notified by the Consulate that their papers were not received until after December 31, 1976 and as a result, believing themselves to be registered on the Visa Waiting List as *Silva*[2] aliens, they went to the INS office in August of 1977 to obtain work "permisos." Work permisos are papers issued by the INS that authorize an alien to seek employment in the United States. At this time INS officials informed them that they had not received a 1976 priority date because their papers were submitted nine days after the *Silva* cutoff date. Deportation proceedings were begun shortly thereafter because of their illegal entry.

At the deportation hearing the INS contended that the Venturas had been notified by a letter from the Consulate that they were not protected by the *Silva* injunction. The Venturas conceded that they were not entitled to any preferential status under the amended laws and that they were deportable under 8 U.S.C. § 1251(a)(2)[3] unless deemed included in the *Silva* class.

The Immigration Judge refused to decide if the Venturas were protected by the Silva injunction and found them deportable based on their confessed illegal entry as charged in the Orders to Show Cause. This decision was sustained by the Board of Immigration Appeals (BIA) which held that neither it nor the Immigration Judge had authority to review the Consul's decision denying the Venturas a visa. The BIA further declined to extend *Silva* protection to persons not having the requisite priority dates. Since there was no other defense against deportation the BIA dismissed the appeal and gave the Venturas 30 days to voluntarily leave the country. This appeal followed.

Prior to January 1, 1977 § 1182(a)(14) required all aliens, except those having the requisite relationship to a United States citizen, to obtain a labor certificate from the Secretary before becoming eligible for a visa. As parents of an American born child, the Venturas would have come within the exception had their papers been timely submitted. Amendments to the law, effective January 1, 1977, removed parents of American born children from special immigrant status where the child had not yet attained the age of 21.

Applications submitted to the Consulate are given a priority date which determines the order in which the applicants are considered for visas. The priority date for aliens seeking visas by virtue of their relationship to an American citizen is the date of submission to the Consulate of evidence establishing that relationship. 22 C.F.R. § 42.62(b)(2). The Department of State Foreign Affairs Manual has defined date of

---

1. In 1976 8 U.S.C. § 1182(a)(14) provided for the exclusion of aliens that had not secured a labor certificate from the Secretary of Labor. However, parents, spouses or children of U. S. citizens or resident aliens were exempted from this requirement.

2. Silva aliens are aliens with visa priority dates between July 1, 1968 and December 31, 1976. They are protected from deportation by a permanent injunction entered in *Silva v. Bell*, No. 76 C 4268 (N.D.Ill. Nov. 9, 1979). That case was brought to recapture Western Hemisphere visa numbers given to Cuban refugees during that time period.

3. Section 1251 of Title 8 provides for the deportation of any alien that has entered the United States without inspection.

submission as "the date on which the evidence was date-stamped received by the receiving post, not the date on which it was reviewed."

On this appeal the Venturas challenge the decision of the Immigration Judge and the BIA not to consider their claim to *Silva* protection. They also contend that 22 C.F.R. is unconstitutionally vague on its face and as applied to them. Their remaining claim is patently frivolous and will not be discussed.[4]

## I

■ Essentially the relief sought is a review of the Consul's decision denying their application for a visa. Such a review is beyond the jurisdiction of the Immigration Judge, the BIA and this court.

The Supreme Court has repeatedly affirmed that the legislative power of Congress over the admission of aliens is virtually complete. *Fiallo v. Bell*, 430 U.S. 787, 792, 97 S.Ct. 1473, 1477, 52 L.Ed.2d 50 (1977); *Kleindienst v. Mandel*, 408 U.S. 753, 766, 92 S.Ct. 2576, 2583, 33 L.Ed.2d 683 (1972); *Galvan v. Press*, 347 U.S. 522, 530–32, 74 S.Ct. 737, 742–743, 98 L.Ed. 911 (1954); *Nishimura Ekiu v. U. S.*, 142 U.S. 651, 659–60, 12 S.Ct. 336, 338–339, 35 L.Ed. 1146 (1892). The scope of judicial review is necessarily limited by the recognition that the power to exclude or expel aliens, as a matter affecting international relations and national security, is vested in the Executive and Legislative branches of government. *Fong Yue Ting v. U. S.*, 149 U.S. 698, 713, 13 S.Ct. 1016, 1022, 37 L.Ed. 905 (1893); *accord, Fiallo, supra.* As such judicial in-

tervention has been restricted to those matters the review of which has been "authorized by treaty or by statute, or is required by the paramount law of the Constitution." *Hampton v. Mow Sun Wong*, 426 U.S. 88, 101 n.21, 96 S.Ct. 1895, 1904 at 21, 48 L.Ed.2d 495 (1976) citing *Fong Yue Ting, supra*, 149 U.S. at 713, 13 S.Ct. at 1022. Justice Harlan's statement in *Lem Moon Sing v. U. S.*, 158 U.S. 538, 15 S.Ct. 967, 39 L.Ed. 1082 (1895) still clearly expresses the Court's position:

> The power of Congress to exclude aliens altogether from the United States, or to prescribe the terms and conditions upon which they may come into this country, and to have its declared policy in that regard enforced exclusively through executive officers, without judicial intervention, is settled by our previous adjudications.

*Id.* at 547, 15 S.Ct. at 970; *Kleindienst, supra*, 408 U.S. at 766, 92 S.Ct. at 2583.

From this foundation evolved the doctrine of nonreviewability of a Consul's decision to grant or deny a visa. Congress conferred upon Consular officials the authority to issue or withhold a visa and specifically exempted the exercise of this power from review by the Secretary. 8 U.S.C. §§ 1104(a) and 1201(a).[5] Prior to enactment of the Immigration Act the suggestion that the Consul's decision be administratively or judicially reviewable was rejected.

"Consular decisions—Although many suggestions were made to the committee with a view toward creating in the De-

---

4. The Venturas also attempt to allege a due process violation by claiming that statements made by them to INS officials in August of 1977 were involuntary and therefore not admissible against them at the deportation hearing. The theory advanced is that they were lured to the INS office by promises of *Silva* work permisos. However it is admitted that the INS never contacted the Venturas or asked them to come to the INS office and that the Venturas learned of the work permisos from other aliens that did receive letters verifying their status as *Silva* aliens. Nothing in the record supports a due process claim and we find no due process violation.

5. 8 U.S.C. § 1104 provides in pertinent part:

(a) The Secretary of State shall be charged with the administration and the enforcement of the provisions of this chapter and all other immigration and nationality laws relating to (1) the powers, duties, and functions of diplomatic and Consular officers of the United States, except those powers, duties, and functions conferred upon the Consular officers relating to the granting or refusal of visas; . . . .

partment of State a semijudicial board, similar to the Board of Immigration Appeals, with jurisdiction to review consular decisions pertaining to the granting or refusal of visas, the committee does not feel that such body should be created by legislative enactment, nor that the power, duties and functions conferred upon Consular officers by the instant bill should be made subject to review by the Secretary of State...."

House Report No. 1365, 82nd Congress, 2d Session, U.S.Code Cong. & Admin.News, 1952, p. 1653, 1688.

As early as 1929 the courts refused to review a Consular official's decision to deny a visa. *U. S. ex rel. Ulrich v. Kellogg*, 30 F.2d 984 (D.C.Cir.1929). In *Ulrich* the court stated it could find no basis for the review of the Consular official's action, denying a visa, by a cabinet officer or any other authority. *Id.* at 986. This position has been followed by other courts including this circuit. *Loza-Bedoya v. INS*, 410 F.2d 343 (9th Cir. 1969); *Braude v. Wirtz*, 350 F.2d 702 (9th Cir. 1965); *accord, Wan Shih Hsieh v. Kiley*, 569 F.2d 1179 (2d Cir. 1978); *Castaneda-Gonzales v. INS*, 564 F.2d 417 (D.C. Cir.1977).

In *Loza-Bedoya*, an alien that illegally entered this country after having been denied a visa sought to have corrected at his deportation hearing misinformation given to the Consular official concerning his eligibility for a visa. This court held that even though the Consular officers ruling may have been based on erroneous information the court was without jurisdiction to order the Consular officer to issue a visa to an alien whether or not he was excludable. *Id.* at 347.

The Venturas place strong reliance on *Fiallo, supra, Corniel-Rodriguez v. INS*, 532 F.2d 301 (2d Cir. 1976) and *Martinez v. Bell*, 468 F.Supp. 719 (S.D.N.Y.1979). We have reviewed those cases and are satisfied that none support the proposition that a Consul's decision concerning the issuance of a visa is reviewable.

In *Fiallo* the Court held that 8 U.S.C. §§ 1101(b)(1) and 1101(b)(2) did not unconstitutionally discriminate against natural fathers and their illegitimate off-spring by denying them the special preference status of "parent-child". The Court's position has always been that cases alleging constitutional infirmities in the immigration laws are subject to judicial review. *Fong Yue Ting, supra*, 149 U.S. at 713, 13 S.Ct. at 1022; *accord, Kleindienst, supra* (8 U.S.C. § 1182(a)(28)(D) and (G)(v) and § 1182(d)(3)(A) challenged); *Boutilier v. INS*, 387 U.S. 118, 87 S.Ct. 1563, 18 L.Ed.2d 661 (1967) (8 U.S.C. § 1182(a)(4) challenged); *Lem Moon Sing, supra* (Appropriation Act of 1894 challenged). The petitioners in *Fiallo* did not challenge the Consul's decision denying their visa applications but questioned the constitutionality of the underlying statute which the Consul must by law follow in executing his duties.

Nor was the Consul's decision the subject of review in *Corniel-Rodriguez.* There the petitioner had been given a visa as the child of a special immigrant and was not told by the Consular officer, as is required by law, that a marriage prior to her entry into the United States would revoke her visa. She married three days before coming to America. When the INS learned of her marriage a deportation hearing was held and she was found deportable. Neither the Immigration Judge or the BIA considered the Consul's noncompliance with the regulations in making their findings. The Second Circuit decided the equities of the case merited consideration of this factor and the finding of deportability was reversed.

In the *Martinez* case, the petitioners invoked the same parent-child exception as do the Venturas, and claimed to have mailed their applications prior to January 1, 1977, although they were not received by the Consulate until after that date. The court reiterated that "it is not within the jurisdiction of this court to review a Consular or INS decision whether to issue a visa, nor may the court direct such officials to issue a visa or grant resident alien status to any individual." *Id.* at 726. However, the district judge found the existence of a factual issue with respect to the timely filing of the

claims and directed the State Department to conduct a hearing on the issue. Because we hold the regulations promulgated by the State Department clearly resolve this issue adverse to the Venturas a hearing is unnecessary.

The Immigration Judge and BIA properly refused to consider the Venturas' claim to Silva protection as this was a matter within the exclusive province of the Consul. Similarly, this court has no jurisdiction to alter or review the decision of the Consulate denying the Venturas a pre–1977 priority visa number.

## II

The Venturas also contend that 22 C.F.R. § 42.62(b)(2), the regulation under which Consular officials determine the priority dates for special immigrant status, is unconstitutionally vague on its face and as applied to them. In 1976 that section made the date of submission to the Consulate of evidence establishing the requisite relationship the priority date for such applicants. The Venturas contend that the phrase "date of submission," is susceptible to varying interpretations and therefore fails adequately to inform what is necessary for a timely submission. This argument is without merit.

The Foreign Affairs Manual prepared by the Department of State defines "date of submission" as "the date on which the evidence was date-stamped as received by the receiving post, not the date on which it was reviewed." F.A.M. Vol. 9 Part III 22 C.F.R. § 42.62. Where a possible ambiguity exists in an administrative regulation the ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation. *U. S. v. Larionoff*, 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977); *INS v. Stanisic*, 395 U.S. 62, 72, 89 S.Ct. 1519, 1525, 23 L.Ed.2d 101 (1969); *Bowles v. Seminole Rock Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed.2d 1700 (1945). This principle has been followed in this circuit. *Ruangswang v. INS*, 591 F.2d 39 (9th Cir. 1978); *Hart v. McLucas*, 535 F.2d 516 (9th Cir. 1976).

As "date of submission" is defined by the State Department it makes clear that the priority date is to be the same date as that stamped on the application by the Consulate thereby making the date-stamp controlling. This is neither vague or ambiguous.

The Venturas also claim that the regulation as applied to them was unconstitutional but do not specify in what way and we need consider it no further.

We repeat: This court is without power to substitute its judgment for that of a Consul, acting pursuant to valid regulations promulgated by the Secretary, on the issue of whether a visa should be granted or denied.

The decision of the Board of Immigration Appeals is affirmed.

*AFFIRMED.*