**Ahmad EL–WERFALLI, Petitioner,**

v.

**William French SMITH, et al.,
Respondents.**

No. 82 Civ. 5849 (ADS).

United States District Court,
S. D. New York.

Sept. 16, 1982.

Wasserman, Orlow, Ginsberg & Rubin, New York City, for petitioner.

John S. Martin, Jr., U. S. Atty., S.D.N.Y. by Thomas E. Moseley, Sp. Asst. U. S. Atty., New York City, for respondents.

## MEMORANDUM AND ORDER

SOFAER, District Judge.

Petitioner, a Libyan national, seeks a writ of habeas corpus ordering his release from custody of the Immigration and Naturalization Service ("INS"). He was detained when attempting to enter the United States on August 20, 1982. His purpose in entering was to continue studying at the Spartan School of Aeronautics in Tulsa, Oklahoma. He is being trained at Spartan as a specialist in spare parts for aircraft, under a contract between the school and the government-owned Libyan Arab Airlines ("LAA") for which he works. At the time he entered the country he held a nonimmigrant visa as a student, which had been issued at Madrid in August 1981. He had previously entered this country and studied at Spartan from 1981–82, and had visited Libya and England during the summer of 1982. When detained, he was accompanied by his wife and child, both of whom have nonimmigrant visas as the spouse and child of a student holding a student visa. *See* 8 U.S.C. §§ 1101(a)(15)(F)(i) and (ii).

When petitioner presented himself for inspection on arrival in the United States he was informed that his visa had been cancelled. The cancellation was ordered on that day by Louis P. Goelz, Deputy Assistant Secretary for Visa Services, Bureau of Counsular Affairs, Department of State, who is authorized by law to invalidate nonimmigrant visas. 22 C.F.R. § 41.122(f)(1). Mr. Goelz also invalidated the visas of Mr. El-Werfalli's wife and child, since their entitlement derived from Mr. El-Werfalli's visa. Mr. Goelz has given the following unclassified reasons for his action (Affidavit, ¶ 4):

> I was further informed that Mr. El-Werfalli's purpose in seeking entry into the

United States was to continue a course of study at the Spartan School of Aeronautics, Tulsa, Oklahoma. That school offers operational courses in flight operations and aircraft maintenance. On the basis of intelligence information of a classified nature regarding the uses to which Libya has put its civilian and military aircraft, I concluded that Mr. El-Werfalli's purpose in seeking entry involved activities which would be prejudicial to the public interest, and endanger the welfare or security of the United States within the meaning of section 212(a)(27) of the Immigration and Nationality Act, as being contrary to United States foreign policy objectives.

Petitioner was served with notice of temporary exclusion on August 25 after which the matter was referred to the Regional Commissioner. The Regional Commissioner, after receiving petitioner's submissions, ruled on September 2 that petitioner was inadmissible under 8 U.S.C. § 1182(a)(27) in that his entry would be prejudicial to the public interest or endanger the welfare, safety or security of the United States. The decision was based on classified information the disclosure of which the Regional Commissioner found would be prejudicial to the public interest, safety and security of the United States. That decision is final under 8 C.F.R. § 235.8(c).

Petitioner challenges the revocation of his visa and the conclusion that he is inadmissible for security reasons. He alleges that he is a young man trying to learn a trade and thereby make a living to support his growing family. He says he is not and has never been involved in politics and feels he is an innocent victim of the poor relations that have developed between Libya and the United States. He also protests that the Government has moved to exclude him, while allowing several other Libyan classmates to return unmolested to their studies at Spartan. The Spartan School confirms this latter point, and has provided INS with affidavits from a few Libyan students who were permitted recently to return to the United States.

The Government argues that, once a reviewing court has found that 8 U.S.C. § 1225(c) was properly invoked, the court should refrain from any further review of the finding that petitioner is excludable. Government Brief at 13. Section 1225(c) provides the procedural mechanism for exclusion of aliens found to be threats to national security. It expressly eliminates the need for any further inquiry by a Special Inquiry Officer once the Attorney General (or by delegation the Regional Commissioner) concludes, on the basis of information the disclosure of which would be prejudicial to the public interest, safety, or security, that an alien is inadmissible under 8 U.S.C. § 1182(a)(27). The statute does not, however, expressly eliminate the very limited judicial review traditionally applied in this area. In any event, the Government has not pressed its claim that exclusion decisions under section 1225(c) are unreviewable; rather, it has supplied the Court with unclassified and classified information, and argues that the information proves the Government has acted "on the basis of a facially legitimate and bona fide reason . . . ." Government Brief at 16.

The test suggested by the Government was articulated in *Kleindienst v. Mandel,* 408 U.S. 753, 770, 92 S.Ct. 2576, 2585, 33 L.Ed.2d 683 (1972), and was recently applied in this Circuit when the Court of Appeals upheld Judge Leval's decision in *NGO Committee on Disarmament v. Haig,* 82 Civ. 3636 (S.D.N.Y. June 10, 1982), aff'd mem., No. 82–6147 (2d Cir. June 18, 1982), which dealt with exclusion under 8 U.S.C. § 1182(a)(28)(C)(v). This governing standard permits the Court to inquire as to the Government's reasons, but proscribes its probing into their wisdom or basis. If the Court finds that the Government acted on a facially legitimate and bona fide reason, its inquiry is complete. Judge Leval found facially lawful reasons in *NGO,* and refused even to examine the classified information submitted *ex parte* to support the Government's position.

In this case the Government's reasons for its decision are barely suggested in the unclassified information it provided the Court.

The affidavit of Mr. Goelz states that the Government's decision was made on the "basis of intelligence information of a classified nature regarding the uses to which Libya has put its civilian and military aircraft." Goelz aff. ¶ 4. Petitioner's studies at Spartan will qualify him to perform aviation support services, and the State Department appears to want to prevent him from being able to provide such services to Libya because of the uses to which Libya puts its aircraft. This reasoning is facially valid and bona fide, but taken alone it is so general that one cannot know what the Government means when it refers to the uses Libya makes of its aircraft, and whether it has a policy concerning the training of all support personnel or is merely making an example of petitioner. By contrast, in *NGO* the Government asserted that the individuals seeking entry were members of an organization that had a long-standing, direct political and financial affiliation with the Communist Party of the Soviet Union and was considered an instrument of Soviet policy. The Government also noted in *NGO* that the applicants had not been invited to participate in any U.N. function.

The grounds for petitioner's exclusion suggested in this case are so general that they arguably fail to establish a reasoned basis for action. One has to engage in unsupported inference and speculative suppositions as to government policy to construct a logical connection between petitioner's exclusion and a political goal related to the "public interest, safety, or security" of the United States. To determine whether an adequate basis exists for the Government's position, therefore, the Court examined the classified material.

The classified submission makes clear that the Government has developed a policy concerning the training of personnel able to aid the operation of Libyan aircraft. It has done so on the basis of information relating to how Libya has used its civilian and military aircraft. The classified material explains how Libyan policies and objectives are furthered by the availability of aircraft, and why the furthering of those policies and objectives are at least a threat to the public interest and welfare, if not the safety or security, of the United States. These explanations are sufficient under *Mandel* to justify the exclusion, even though the Government does not suggest that petitioner will engage in any misconduct while he is in the United States.

The Government is free to form political objectives, and to advance those objectives with all the diplomatic and legal means properly at its command. Exclusion of aliens is a valid means within the Government's power to invoke where, as here, the exclusion is based on a facially valid, bona fide reason.

Petitioner's claim that he has been treated unfairly is likewise meritless. The Government concedes that other Libyans have recently entered this country and are studying at the Spartan School. But the Government strongly suggests that the other students simply managed to avoid or evade its policy. It argues that petitioner should obtain no benefit from the fact that the Government has not yet succeeded in excluding those of his fellow students that are similarly situated. That is clearly a correct position. *See, e.g., Mehta v. INS,* 574 P.2d 701, 705 (2d Cir. 1978).

In light of the sufficiency of the Government's basis for excluding petitioner, no need exists to consider the claim that he is entitled to review of the termination of his visa. The petition for habeas corpus is denied. The Government will seal and hold its classified submission for possible review on appeal.

SO ORDERED.