**In re Richard ROBIDOUX, Debtor.**

**Bankruptcy No. 4–80–00378–G.**
**Appeal No. 89–40052–XX.**

United States District Court,
D. Massachusetts.

July 30, 1990.

Jay M. Pabian, Bruce W. Edmands, Mahoney, Hawkes & Gouldings, Boston, Mass., for Richard E. Robidoux.

M. Ellen Carpenter, Asst. U.S. Atty., Boston, Mass., Thomas R. Jones, Atty. Tax Div., U.S. Dept. of Justice, Washington, D.C., for U.S.

## MEMORANDUM OF DECISION

YOUNG, District Judge.

### INTRODUCTION

In 1979, the Internal Revenue Service (the "Service") conducted an audit on the 1977 and 1978 tax returns of Mr. Richard Robidoux ("Robidoux"). Subsequent to completing the audit, the Service prepared

an audit report in which it determined that Robidoux owed $2,044,984.06 in past due taxes for these years.[1] In 1981, Robidoux's creditors placed him in involuntary bankruptcy. Upon notice of Robidoux's bankruptcy status, the Service filed a proof of claim against the Robidoux estate for the allegedly delinquent taxes. In December, 1987, Robidoux filed a Motion to Determine Tax Liability in the Bankruptcy Court. Upon hearing the evidence, the Bankruptcy Court took a somewhat different view from that of the Service and found that, far from owing the Service over $2,000,000, in fact the Service owed Robidoux a refund of $848.57. Following up his victory, Robidoux requested an award of attorney's fees pursuant to 26 U.S.C. sec. 7430 (1989).[2] On February 22, 1989, the Bankruptcy Court held that the position of the Service in claiming $2,044,984.06 in back taxes was not substantially justified and granted Robidoux's motion for attorney's fees. On March 9, 1989, the Service submitted a motion to alter or amend the award of attorney's fees. The Bankruptcy Court denied the motion on March 21, 1989. Pursuant to Bankruptcy Rule 8001(a), the Service appeals the order awarding attorney's fees to this Court. Jurisdiction in this case is granted by 28 U.S.C. sec. 158 (1989).

## I. Factual Background.

This Court need not rehearse the comprehensive findings and rulings of the Bankruptcy Court and, instead, sets forth below only the data necessary to an understanding of the issues presently before it. The first relevant run-in between Robidoux and the Service commenced prior to 1977 when the Service initiated a criminal investigation against him, alleging that he had made an illegal disposition of a Small Business Loan. At the time of the criminal investigation, Robidoux owned two corporations: United Chevrolet, Inc. ("Chevrolet") and United Venture, Inc. ("Venture"). Venture received a Small Business Loan from the United States Government and in turn made a loan of a substantial portion of the funds to Chevrolet. The Service subpoenaed all of the financial records, including all the tax returns and accountant's work papers, of Robidoux and his two corporations. Both Robidoux and the two corporations complied with the subpoena. The Service subsequently lost the records turned over to it.

When Robidoux was called upon to defend the tax deficiency claim at issue in the bankruptcy proceedings, he attempted to obtain copies of the records previously subpoenaed by the Service. Of course, Robidoux was unable to obtain these records through discovery because the Service had lost them. The Bankruptcy Judge commented dryly that "[t]he trial was hampered by the fact that records of the Debtor and his corporations ... were largely unavailable." *In re Robidoux*, No. 4–80–00738–G, slip op. at 3 (Bankr.D.Mass. Sept. 1, 1988).

Accordingly, Robidoux's evidence at trial in the Bankruptcy Court consisted primarily of his own testimony and that of the accountant, Terence J. Shepherd, who prepared Robidoux's individual and corporate tax returns for the years in question. Mr. Shepherd testified, and the Bankruptcy Court found, that all of the deductions for expenses and losses on Robidoux's tax returns were based on documentation and were supported. The Service presented no evidence to rebut or contradict Mr. Shepherd's testimony. Indeed, having lost the relevant records, it is difficult to see what evidence the Service might have adduced. The Bankruptcy Court found that the loan between the two companies was used for

---

1. This figure is the sum of income taxes allegedly due for the years 1977 and 1978, a 50% fraud penalty for both years, a 100% withholding tax penalty, interest, and a lien fee.

2. The statute provides:
   In any administrative or court proceeding which is brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under this title, the prevailing party may be awarded a judgment or a settlement for (1) reasonable administrative costs incurred in connection with such administrative proceeding within the Internal Revenue Service, and (2) reasonable litigation costs incurred in connection with such court proceeding.
   26 U.S.C. sec. 7430 (1989).

business purposes and had not been misappropriated for personal use. The court stated that the Service failed to introduce any evidence of personal use of the loan funds transferred between the two corporations, a major portion of the alleged tax deficiency.[3] Finally, the Service's claim that Robidoux wrongfully deducted a rental loss from his income because he did not own legal title to certain property was rejected by the Bankruptcy Court because that court found that Robidoux owned equitable or beneficial title.[4]

In ruling on the issue of attorney's fees, the Bankruptcy Court found that the Service's claim of tax deficiency was primarily based on the alleged misappropriation of an intercompany loan. The court noted that the Service had planned to admit as evidence of the misappropriation a certain guilty plea of Robidoux made as a result of the criminal investigation concerning this loan. The Bankruptcy Court, however, held the plea inadmissible.

## II. Discussion.

The Bankruptcy Court found that Robidoux had exhausted all of the administrative remedies available within the Service and held that the position adopted by the Service was not substantially justified under 26 U.S.C. sec. 7430(b)(2) and (c)(4)(A). *In re Robidoux*, slip op. at 1, 3 (Bankr.D. Mass. February 22, 1989).[5] It thereupon awarded Robidoux attorney's fees in an amount totalling $79,891.53.

Typically, the "reasonable litigation costs" available under the statute are limited to a maximum of $75 an hour. 26 U.S.C. sec. 7430(c) (1989). Here, the Bankruptcy Court awarded fees averaging approximately $137 an hour, stating that the higher amount was warranted based on:

"(i) an increase in the cost of living since the 1986 amendment to 26 U.S.C. sec. 7430, (ii) the limited availability of qualified attorneys for this proceeding, (iii) the completely unfounded nature of the government's claim, in both fact and law, (iv) the failure of the government to introduce *any* relevant evidence at the trial, and (v) the government's conduct in subpoenaing and then losing the Debtor's records...." *Id.* at 4 (emphasis in original).

## A. Exhaustion.

■ In order to exhaust administrative remedies as required by section 7430, a party must (1) participate in person or by a qualified representative in an Appeals Office Conference, and (2) provide the Appeals Office with a reasonable amount of time to consider the tax matter, or, if no Appeals Office Conference is granted, (a) request an Appeals Office Conference, (b) file a written protest, and (c) agree to give the Appeals Office a reasonable amount of time to consider the tax matter. 26 C.F.R. sec. 301.7430–1(b) (1989). The regulation goes on to explain that a person participates in an Appeals Office Conference when the individual or his representative presents to the Appeals Office all relevant information regarding the party's tax matter. *Id.* at (b)(2). The Bankruptcy Court found that prior to the litigation for tax deficiency, Robidoux had exhausted his administrative remedies available within the Service. *In re Robidoux*, slip op. at 1 (Bankr.D.Mass. February 22, 1989). The Service argues that the Bankruptcy Court erred in finding exhaustion.

■ This Court reviews the factual findings of the Bankruptcy Court only to determine whether any of those findings are "clearly erroneous." Bankr.R. 8013; Fed.

---

**3.** The Service alleges that if Robidoux had used the corporate loan for his personal expenses, the loan would have to be reclassified as income on his personal income tax return.

**4.** The Bankruptcy Court commented that the Service's "disallowance of rental losses was grounded on the curious theory that one who owns property beneficially in a name of a straw is not entitled to deduct rental losses." *In re*

*Robidoux,* No. 4–80–00378–G, slip op. at 3 (Bankr.D.Mass. Feb. 22, 1989).

**5.** In this case it seems clear that Robidoux prevailed on the primary issues in the underlying suit. After all, an alleged $2,044,984.06 tax deficiency became, after hearing, an $848.57 refund. Therefore the requirements of 26 U.S.C. sec. 7430(c)(4)(A)(i) focus on whether the position of the Service was substantially justified.

R.Civ.P. 52(a). *See also Pierce v. Underwood,* 487 U.S. 552, 558, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). This standard of review is identical to that employed by a court of appeals in reviewing the fact-findings of a district court, *viz.,* "[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson v. Bessemer City,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985). If the evidence permits two contrasting views, a factfinder's choice of one view over the other can never be clearly erroneous. *Id.* at 574, 105 S.Ct. at 1512 (citations omitted). The Supreme Court also made clear that this standard of review applies to all types of factfinding, not only factfinding which is based on the credibility of a witness. *Id.*

At the hearing on the motion requesting the award of attorney's fees, Robidoux submitted an affidavit of Mr. Robert Charron, his accountant. The affidavit stated that Mr. Charron had participated in an Appeals Office Conference sometime after February 1981 and that Mr. Charron had revealed in the conference "all relevant tax information concerning Mr. Robidoux's 1977 and 1978 income tax returns." Affidavit of Mr. Robert Charron, December [ ], 1988, paras. 4, 5.[6] This was the only relevant information before the Bankruptcy Court at the time of its order awarding attorney's fees on February 22, 1989. Five days later, on February 27, 1989, Mr. John Gouzoules, an Appeals Officer of the Service in Boston, executed an affidavit in which he stated that he remembered attending an Appeals Office Conference with Robert Charron. Declaration of John Gouzoules, Feb. 27, 1989, para. 2. Mr. Gouzoules' affidavit also states, however, that the conference pertained to the tax matters of Venture, one of the companies owned by Robidoux. *Id.* at para. 2. Mr. Gouzoules did not recall ever attending an Appeals Office Conference involving Robidoux's personal tax liability. *Id.* at para. 3.

The Service argues that Mr. Gouzoules' affidavit should be considered before concluding that Robidoux exhausted his administrative remedies. Were the Bankruptcy Court to have considered the statements in Mr. Gouzoules' affidavit, the Service argues that it should have given those statements more weight than Mr. Charron's because Mr. Charron's affidavit is vague as to the time of the meeting and refers to an appeals officer Mr. Gonzales. Memorandum in Support of Motion of the United States to Alter or Amend the Attorney's Fees Award, March 8, 1989, at 2.

Even were this Court to ignore the fact that Mr. Gouzoules' affidavit was untimely filed and therefore was not even before the Bankruptcy Judge at the hearing on attorney's fees, the Service falls far short of establishing that the Bankruptcy Court was clearly erroneous in failing to reconsider its ruling in light of Mr. Gouzoules' affidavit. Significantly, both the Charron and the Gouzoules affidavits speak of an Appeals Office Conference involving Mr. Charron. The Charron affidavit states that all of the relevant tax information concerning Robidoux was disclosed to the Appeals Officer during the conference, while the Gouzoules affidavit states that the conference pertained to Venture, a company wholly owned by Robidoux. These statements are not necessarily mutually exclusive. Even if they were, it was within the well considered discretion of the Bankruptcy Judge to choose between the possible views of the evidence. *Anderson,* 470 U.S. at 574, 105 S.Ct. at 1511. This Court holds that, as the Bankruptcy Court's findings of fact concerning Robidoux's exhaustion of his administrative remedies were not clearly erroneous, there was likewise no error in declining to reconsider the matter once the Gouzoules affidavit was filed.

**B. Substantial Justification.**

◼ In considering whether the Service was "substantially justified" in its position,

---

**6.** The Court infers that Mr. Charron's affidavit was both signed and dated, though its copy is    not.

this Court is limited to determining whether the Bankruptcy Court abused its discretion in deciding that it was not. *Berks v. United States*, 825 F.2d 1262, 1263 (8th Cir.1987); *see also Pierce*, 487 U.S. at 571–74, 108 S.Ct. at 2553–55 (interpreting provision for award of attorney's fees under the Equal Access to Justice Act).[7] After review of the Bankruptcy Court's written opinion and analysis, this Court holds that the Bankruptcy Court carefully considered the underlying facts and law and did not abuse its discretion in finding the United States' position to be not substantially justified.

■ The Bankruptcy Court, in its written opinion, states that the position of the Service pertaining to the misappropriation of loan funds "was grounded in no known legal theory" and that the disallowance of rental losses "was grounded on [a] curious theory." *In re Robidoux*, slip op. at 3 (Bankr.D.Mass. Feb. 22, 1989). *See also* note 4 above. The Bankruptcy Court went on to state that the "government presented no justification or any evidence whatsoever as to either of these matters, or as to the rest of the claim." *Id.*

The Service argues here that since a Grand Jury returned an indictment against Robidoux after considering evidence that he misappropriated funds from a Small Business Loan, there must have been substantial justification to pursue an action for delinquent taxes. This would be a strong argument if the tax returns at issue here pertained to 1976. This case, however, involves Robidoux's 1977 and 1978 tax returns.[8] As a general proposition, the Service will not here be heard to argue that its position relating to misappropriation of a loan in 1977 and 1978 is "substantially justified" because Robidoux had earlier pled guilty to misappropriation in 1976. *See* Fed.R.Evid. 404(a). To avoid the general

prohibition on the substantive admission of character evidence, the Service argues in its brief on appeal that the prior conviction established a pattern of conduct involving the misappropriation of Small Business Loans. *See* Fed.R.Evid. 404(b).

■ The Service fails to recognize, however, that the Bankruptcy Court based its decision to award attorney's fees on the fact that the Service failed utterly to proffer any evidence to rebut Robidoux's proof that the loans here at issue were not misappropriated. Evidence of "other bad acts" such as that upon which the Service pins its hopes here is simply not admissible in the absence of relevant evidence to make out a prima facie case upon the issues framed by the pleadings. *United States v. Calvert*, 523 F.2d 895, 908 (8th Cir.1975) (holding that evidence of prior crime could not be used to prove *corpus delicti* of the charged crime), *cert. denied*, 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976). Evidence admissible under Fed.R.Evid. 404(b) may assist a party in carrying its burden of persuasion but, standing alone, cannot satisfy a party's burden of going forward:

> Where the proof of other acts is offered to show that the person engaged in the disputed conduct, the weak probative value of the evidence of other crimes, wrongs, or acts is swamped by the countervailing considerations of fairness and efficiency. Therefore, the general rule is, as stated in Rule 404(b), that other acts may not be used to prove the conduct of the actor. But once it has been shown *by other evidence* that the act was done and the issue is who did the act and with what mental state, the balance shifts.

22 C. Wright & K. Graham, *Federal Practice and Procedure* sec. 5239 (1978) (emphasis added) (footnotes omitted). The Ser-

---

7. The District of Maine has stated that there is "no dispositive difference" between the provision in the Equal Access to Justice Act and section 7430 of 26 U.S.C., both asserting a reasonableness standard for the determination whether the United States' position is substantially justified. *Kaufman v. Egger*, 584 F.Supp. 872, 877 n. 1 (D.Me.1984), *aff'd*, 758 F.2d 1 (1st Cir.1985). In analyzing the Bankruptcy Court's

decision, therefore, this Court will consider case law interpreting the Equal Access to Justice Act.

8. Robidoux had pled guilty to the criminal allegations involving activities in 1976. The Bankruptcy Court, however, held that the plea was not admissible in the underlying tax deficiency case relating to 1977 and 1978.

vice may not assert that its position is "'justified in substance or in the main,'" *Pierce*, 487 U.S. at 565, 108 S.Ct. at 25, if the only evidence of misappropriation it sought to admit in evidence was a guilty plea pertaining to unrelated activity. Under these circumstances, this Court holds that the Bankruptcy Court did not abuse its discretion in concluding that the position of the Service was not substantially justified.

C. Amount of the attorney's fee award.

The statute under which the Bankruptcy Court awarded attorney's fees, 26 U.S.C. sec. 7430, states that only "reasonable litigation costs" may be awarded. The statute defines reasonable litigation costs as "prevailing market rates for the kind or quality of services furnished ... except that such fees shall not be in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for such proceeding, justifies a higher rate." 26 U.S.C. sec. 7430(c)(1). The Supreme Court, in ruling on a provision with similar language in the Equal Access to Justice Act, stated that in order to "preserve the intended effectiveness of the $75 cap, ... the other 'special factors' envisioned by the exception must be such as are not of broad and general application." *Pierce*, 487 U.S. at 573, 108 S.Ct. at 2555. In this case, the Bankruptcy Court awarded fees in an amount averaging $137 per hour. *In re Robidoux*, slip op. at 4 (Bankr.D.Mass. Feb. 22, 1989). The court enumerated five "special factors" warranting the excess fees: (1) the completely unfounded nature of the claim by the Service, (2) the failure of the Service to introduce any relevant evidence at the trial, (3) the limited availability of qualified attorneys, (4) the conduct of the Service in subpoenaing and then losing Robidoux' records, and (5) an increase in the cost of living. *Id.* The Service argues that this Court should reverse the decision of the Bankruptcy Court to the extent that its award exceeds $75 per hour.

After considering the reasoning of the Bankruptcy Court in awarding excess attorney's fees, this Court rules that several of the "special factors" do not warrant excess fees. The first and second factors, the "completely unfounded nature of the claim" and the "failure of the government to introduce any evidence at the trial," are factors bearing on whether the position of the Service was substantially justified. The Bankruptcy Court, however, seems to have used these facts not only to find that the position of the Service lacked substantial justification, but then again as "special factors" in awarding a fee greater than that specifically authorized by the statute. These two factors may not be considered in awarding excess fees. When Congress enacted 26 U.S.C. sec. 7430, it created a remedy for parties taken to court by the government without substantial justification. Congress limited attorney's fees in most such cases to $75 per hour. Under these circumstances, it is illogical to assume that Congress intended to allow the same facts which imply that the government's position was not substantially justified also to justify an award of attorney's fees in excess of the standard $75 per hour rate. If these facts were considered in awarding excess fees, there would never be a case in which the $75 standard fee would be used. This Court, therefore, declines to consider the first and second "special factors" as justification for the excess award.

Another "special factor" enunciated by the Bankruptcy Court was the limited availability of qualified attorneys for the proceeding. In *Pierce*, 487 U.S. at 572, 108 S.Ct. at 2554, the Supreme Court stated that the limited supply of qualified attorneys refers to "attorneys having some distinctive knowledge or specialized skill needful for the litigation in question ... such as patent law, or knowledge of foreign law or language." The *Pierce* case, however, deals with the Equal Access to Justice Act rather than a tax-related statute such as the one at issue in this case. The statute at issue in this case, 26 U.S.C. sec. 7430, applies solely to tax matters and therefore Congress must have intended more than mere tax specialization in order to warrant the award of fees in excess of the standard $75 per hour. If tax law expertise were

considered a specialization and therefore a "special factor" there would always be justification for excess fees. As the Supreme Court stated in *Pierce*, 487 U.S. at 573, 108 S.Ct. at 2555, the " 'special factors' " envisioned by Congress "must be such as are not of broad and general application." Prior to the hearing on the award of attorney's fees, Robidoux submitted an affidavit from Bruce W. Edmands, Robidoux's trial counsel. The affidavit states that Mr. Pabian, one of the attorneys on the case, is a certified public accountant with a masters degree in taxation and eight years of experience in taxation and accounting. Affidavit of Bruce W. Edmands, December 28, 1988, para. 9. The affidavit states that the other primary attorney, Mr. Edmands himself, is a litigation specialist and has been litigating cases since 1977. *Id.* Since the Bankruptcy Court did not specify why there is a limited supply of qualified attorneys for this particular proceeding, this Court concludes that expertise in taxation and litigation are not the type of unique specialties intended by Congress when section 7430 was enacted to award attorney's fees for wrongful tax cases.

▮ The Bankruptcy Court also reasoned that the loss of Robidoux's records justified an award of fees greater than the standard $75 per hour.[9] While at first blush this factor might be argued to suffer from the concern over "double counting" that leads this Court to decline to consider points one and two above, in fact the incompetence of the Service in losing Robidoux's records not only destroyed the justification which otherwise might have existed to warrant the Service's position in the bankruptcy proceedings, it may also be argued to be a "special factor" which unduly complicated the proceedings. Certainly it falls within the criteria set by the Supreme Court in *Pierce* that the circumstance warranting fees in excess of the standard $75 per hour be specific to a small number of cases and not of general application to most cases. *Pierce*, 487 U.S. at 572–73, 108 S.Ct. at 2554–55. The Bankruptcy

Court used this justification for excess fees on the basis that the loss of Robidoux's records "hampered" his preparation for trial. *In re Robidoux*, slip op. at 3 (Bankr.D. Mass. Sept. 1, 1988). This Court concludes that although the loss of Robidoux's records no doubt "hampered" and extended the trial, it does not follow that the loss of the records required the assistance of more qualified or expensive legal services. Robidoux's preparation for trial was clearly longer and more frustrating than it would have been had the Service not lost his records. The additional time spent on preparation, however, is adequately accounted for by the per hour computation of the award, be it based on the standard $75 per hour rate or a higher rate. Although the loss of the records by the Service is relevant to the total attorney's fees awarded, this Court holds that this factor does not justify a higher than standard hourly rate.

▮ Finally, the Bankruptcy Court justifies the award of attorney's fees in excess of $75 per hour by an increase in cost of living from the enactment of section 7430 in 1986 until the date of the Order, February 22, 1989. The Bankruptcy Court awarded fees approximately 82% higher than the statutory limit of $75. The Bankruptcy Court did not cite the consumer price index or any other inflation indicator to justify this large percentage increase over the standard $75 rate. *Cf. Sierra Club v. Secretary of Army*, 820 F.2d 513, 520–23 (1st Cir.1987) (relying on an inflation indicator in awarding fees in excess of the $75 per hour standard rate). The affidavit submitted by Mr. Edmands states that the rate charged by his firm, and the rate subsequently awarded by the Bankruptcy Court, is the same rate as "normally charged by law firms in the Boston area of similar size, experience and expertise." Affidavit of Bruce W. Edmands at para. 8. In *Pierce*, 487 U.S. at 572, 108 S.Ct. at 25, the Supreme Court stated that "[w]e do not think Congress meant that if the rates for all lawyers in the relevant city—or even in

---

**9.** The Bankruptcy Court also took into account the loss of the Debtor's records in finding that the government was not substantially justified

in its position. *In re Robidoux*, slip op. at 3 (Bankr.D.Mass. February 22, 1989).

the country—come to exceed $75 per hour (adjusted for inflation), then the market-minimum rate will govern instead of the statutory cap." This Court has found no evidence that the increase in the cost of living between 1986 and 1989 was equal to the 82% increase awarded by the Bankruptcy Court and the fact that the rate is equal to the market rate is not an adequate ground for awarding excess fees under *Pierce.*

Robidoux cites two opinions from this district awarding fees in excess of the standard $75 per hour rate under the Equal Access to Justice Act. In a civil rights case, *de Allende v. Shultz,* 709 F.Supp. 18, 25 (D.Mass.1989), Judge Caffrey awarded attorney's fees of $91 per hour, $88 per hour, and $85 per hour. In addition, Judge Caffrey awarded $175 per hour, without an adjustment for inflation, to a constitutional law scholar, basing this figure on the amount awarded in 1984 to Professor Lawrence Tribe in a similar case. *Id.* at 26. In *McDonald v. Bowen,* 693 F.Supp. 1298, 1306–07 (D.Mass.1988), Judge Garrity awarded attorney's fees ranging from $75 to $100 per hour based on an increase in the cost of living between 1981 when the Equal Access to Justice Act was enacted and 1988 when the case was decided and also on the special expertise of the attorneys in the field of public assistance benefits. These cases are distinguishable on the basis of the time elapsed between the enactment of the statute and the award of attorney's fees, the percent increase over the standard $75 awarded, and the expertise involved.

## CONCLUSION

Upon the totality of the present record, therefore, this Court holds that none of the "special factors" cited by the Bankruptcy Court is adequate to justify an award of attorney's fees in excess of the standard $75 per hour rate. This Court does not ignore inflationary forces, but the generally perceived increase in cost of living between 1986 and 1989 cannot justify an excess award of approximately 82% of the standard rate without—at a minimum—an inflation indicator establishing that this

large increase is appropriate. This Court, therefore, remands the case to the Bankruptcy Court to adjust the rate at which the attorney's fees will be paid to coincide with an established inflation indicator, or the standard $75 per hour rate established by statute, whichever is the greater.

SO ORDERED.